IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERRY L. HARPER                                                                                          PLAINTIFF

      V.                       Civil No. 2:21-cv-02109-PKH-MEF

KILOLO KIJAKAZI[1], Acting Commissioner,
Social Security Administration                                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sherry Harper, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.    Procedural Background

Plaintiff protectively filed her application for DIB on June 29, 2018,[2] alleging disability since April 10, 2016, due to degenerative disk disease ("DDD"), back pain, nerve damage, sciatica, neuropathy, arthritis, asthma, post-traumatic stress disorder ("PTSD"), obsessive compulsive disorder ("OCD"), and anxiety.  (ECF No. 10-3, pp. 35, 53; ECF No. 10-5, pp. 2-3; ECF No. 10-6, p. 18, 56-57).  An administrative hearing was held on June 8, 2020, at which time the Plaintiff was present and represented by counsel.  (ECF No. 10-2, pp. 42-70).  At this time, she amended her alleged onset date to July 23, 2018.

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit.

[2] The record also contains prior unfavorable decisions rendered on November 12, 2010, and September 28, 2017.  (ECF No. 10-3, pp. 10-13, 17-26).

Plaintiff was 38 years old on her amended alleged onset date and possessed a tenth-grade education. (ECF No. 10-2, pp. 33). She had past relevant work ("PRW") experience as a cafeteria cook, fast food cook, and waitress. (*Id*. at 34; ECF No. 10-6, pp. 4-10, 19, 28-29, 38-45).

On September 3, 2020, the Administrative Law Judge ("ALJ") identified the following impairments as severe: mild DDD of the lumbar spine with disk protrusion and impingement of the nerve root; PTSD; depression, variably characterized as bipolar disorder; anxiety; arthritis; obesity; degenerative disease of the cervical spine with mild cord flattening and moderate stenosis; asthma; and mild left shoulder joint degenerative joint disease ("DJD"), status post arthroscopy and decompression. (ECF No. 10-2, pp. 19). She then concluded the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 20). Despite her impairments, the ALJ found she retained the residual functional capacity ("RFC") to perform unskilled, sedentary work requiring only occasional postural activities, frequent overhead reaching with the left upper extremity, no concentrated exposure to pulmonary irritants, and no exposure to bright light or sunshine. (*Id*. at 22). Further, she determined the Plaintiff could perform simple, routine, and repetitive tasks requiring simple work-related decisions and few variables where the social interaction is incidental to the work performed. With the assistance of a vocational expert ("VE"), the ALJ ultimately decided there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including eye glass frame polisher, nut sorter, and printed circuit board checker. (*Id*. at 34).

The Appeals Council denied Plaintiff's request for review on April 8, 2021 (ECF No. 10-2, pp. 2-7), and she filed this action on June 4, 2021. (ECF No. 2). Both parties have filed appeal briefs. (ECF Nos. 16, 17). The matter is ready for Report and Recommendation.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  *See* 20 C.F.R. § 404.1520(a)(4).  The fact finder only considers Plaintiff's age, education, and work experience in the light of her RFC if the final stage of the analysis is reached.  20 C.F.R. § 404.1520(a)(4)(v).

### III.   Discussion

Plaintiff raises five issues on appeal, including a contention that the ALJ failed to properly consider her migraine headaches at step two and three of the sequential process.  At step two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability.  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  An impairment will be found to be non-severe if it amounts only to "a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)).  "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."  *Id*. (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

Here, records reveal a significant history of migraine headaches dating back to adolescence.  (ECF No. 10-7, pp. 61-64; ECF No. 10-8, pp. 5-18, 27-40, 60-65, 67, 72-76, 79-84, 137-141; ECF No. 10-9, pp. 5-27, 32-36, 41-57, 95-127; ECF No. 10-11, pp. 41-52, 64-94, 105-113, 115-125; ECF No. 10-12, pp. 35-42, ECF No. 10-13, pp. 111-112; ECF No. 10-14, pp. 38-45).  Relying on treatment notes from December 2017, February 2018, March 2018, October 2018, and January 2019, wherein the Plaintiff reported that the medications prescribed to treat her

headaches, namely Topamax and Sumatriptan, were at least somewhat effective, the ALJ found her headaches to be non-severe. (ECF No. 10-7, pp. 61-64; ECF No. 10-8, pp. 10-14, 23-27, 40-49, 60-65, 67; ECF No. 10-9, pp. 53-61, 117-127). She concluded that a restriction to simple, routine, and repetitive tasks with simple work-related decisions and few variables, as well as the avoidance to bright light and sunshine would sufficiently address any limitations resulting from Plaintiff's headaches. Following a review of the evidence, we disagree.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. The United States Court of Appeals for the Eighth Circuit has held that a claimant's RFC is a "medical question" that is determined based on "all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Therefore, an ALJ's RFC determination must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). Further, limitations resulting from symptoms such as pain must be factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

In February and March 2018, Plaintiff complained of weekly migraines. (ECF No. 10-8, pp. 40-44). Although she reported some improvement over the next few months, she suffered a setback in December 2018, at which point her weekly headaches returned, lasting up to three days, despite the use of Topiramate. (ECF No. 10-8, pp. 14-18, 23-40).

On December 11, 2018, Plaintiff's treating healthcare provider, Advance Practical Nurse ("APN") Linda Blasingame completed a Migraine Headache Form indicating that the Plaintiff

5

experienced one or more headaches per week with associated nausea, vomiting, photophobia, and/or phonophobia, that would cause her to miss approximately one day of work per week. (ECF No. 10-7, pp. 72-73; ECF No. 10-8, pp. 14-18). She documented only a fair response to Topiramate and Sumatriptan.

In January 2019, Plaintiff reported migraines once every two to three weeks. (ECF No. 10-8, pp. 10-14). Seven months later, this had increased to daily headaches with typical migraines occurring once per week "or so." (ECF No. 10-8, pp. 137-141).

On October 9, 2019, Plaintiff sought out treatment for a migraine that had been ongoing for several days. (ECF No. 10-14, pp. 38-45). She indicated that her migraines had become more frequent, despite taking the Topiramate as prescribed, and requested to see a neurologist. Although she did report being out of Sumatriptan, we note that Sumatriptan is an acute medication rather than a preventative and, as such, will do nothing to prevent the onset of a headache. Nurse Blasingame granted the referral and made no medication changes.

Neurologist Tonya Phillips, M. D., evaluated the Plaintiff on February 19, 2020, at which time she reported waking up with a headache every morning with typical migraines occurring two to three times per week. (ECF No. 10-12, pp. 35-42). Plaintiff also had a history of neck, back, and shoulder issues for which Hydrocodone, Cyclobenzaprine, and Gabapentin had been prescribed. She opined that the Topiramate made her headaches less severe, as opposed to less frequent, and that the Sumatriptan only "sometimes" helped. Dr. Phillips diagnosed chronic intractable migraines, most likely transformed migraine and analgesic rebound. She explained that the Plaintiff would be unlikely to reign in her migraines if she continued to use narcotic pain medication. Concluding that an increased dose of Topiramate would not be helpful, Dr. Phillips prescribed Verapamil.

On April 8, 2020, Plaintiff advised Nurse Blasingame that her migraines persisted, with the Sumatriptan and Topiramate being only somewhat beneficial. (ECF No. 10-14, pp. 48-54). Her medications were continued without change. And on July 8, 2020, she reported continued issues with migraine headaches. (ECF No. 10-14, pp. 65-72).

After reviewing this evidence, we do not find substantial evidence to support the ALJ's conclusion that the Plaintiff's migraine headaches were a non-severe impairment. The link between her neck pain, the pain medication prescribed to treat her chronic neck, back, and shoulder pain, and her migraines is clear. Records dating back to at least 2003 reveal a history of chronic pain related to disk protrusions, stenosis, nerve root impingement, and degenerative changes in the lumbar and cervical spine. (ECF No. 10-8, pp. 18-19; ECF No. 10-10, pp. 32-33, 39, 53, 74-75; ECF No. 10-14, pp. 28-29). Plaintiff was treated by a pain specialist, Adam Sewel, M. D., through January 2017, at which point insurance changes forced her to find another provider. (ECF No. 10-11, pp. 115-125). Most recently, a January 2019 MRI of her lumbar spine showed a moderate sized L4-5 left paracentral disc protrusion causing lateral recess stenosis and impingement on the traversing nerve roots. (ECF No. 10-8, pp. 18-19; ECF No. 10-10, pp. 32-33; ECF No. 10-14, p. 28-29). Nurse Blasingame prescribed conservative measures, including physical therapy and a TENS unit to no avail. (ECF No. 10-8, pp. 5-14; ECF No. 10-13, pp. 111-112).

In May 2019, a neurosurgeon, Joseph Queeney, D.O., opined that surgical fusion was not recommended because it offered only a 10 percent chance of relieving her chronic pain. (ECF No. 10-8, pp. 123-133). Accordingly, in August 2019, the Plaintiff established with Dr. Ornette Gaines and Advanced Registered Nurse Practitioner ("ARNP") Amberlyn Naples at Optimal Pain and Wellness. (ECF No. 10-12, pp. 4-8). They prescribed Hydrocodone, Gabapentin, and Cyclobenzaprine to treat her chronic pain. (ECF No. 10-12, pp. 4-18).

An MRI of Plaintiff's cervical spine conducted in February 2020 also revealed mild multilevel cervical spondylosis, central disc protrusions with mild cord flattening at the C4-5 and C5-6 levels, moderate central canal stenosis at the C5-6 level, and mild left neural foraminal stenosis at the C6-7 level due to uncinated process hypertrophy. (ECF No. 10-13, pp. 36-37). Further, an MRI of her left shoulder later that month disclosed a small amount of fluid present in the subacromial ("SA") bursa with mild degenerative changes in the acromioclavicular ("AC") joint. (ECF No. 10-13, pp. 30-35). Orthopedic surgeon, Jeffrey Evans, M.D., read the MRI to show AC joint arthritis and SA bursitis. (*Id*. at 55-70). He recommended left shoulder arthroscopy with distal clavicle resection and arthroscopic subacromial decompression, which the Plaintiff underwent on February 25, 2020. (*Id*. at 70-78).

These records clearly reveal significant issues involving Plaintiff's back, neck, and shoulder for which narcotic pain medication was necessary. The fact that this medication caused rebound headaches that contributed to, if not accounted for, her frequent migraines, should have been considered by the ALJ at both steps two and three of the sequential analysis. Merely limiting the Plaintiff to unskilled work is not sufficient to account for the work absences and potential concentration issues resulting from said headaches, as well as the medications prescribed to treat them. As such, we find that remand is necessary to allow the ALJ to reconsider the Plaintiff's migraine headaches in combination with her chronic back, neck, and shoulder issues. In so doing, the ALJ should also consider Social Security Ruling 19-4p concerning the evaluation of primary headache disorders.

We also find that the ALJ's limitation to frequent overhead reaching with the left upper extremity may not fully account for the restrictions resulting from her shoulder impairment. As previously mentioned, her arthritis and bursitis necessitated surgical correction. Records dated as

late as July 2020 documented persistent shoulder pain, and Nurse Blasingame referred her to therapy. Therefore, further development of the record is necessary to determine the Plaintiff's ability to use her left arm for work-related tasks.

Accordingly, on remand, the ALJ is directed to obtain medical source statements from Plaintiff's treating pain specialist, neurologist, and orthopedic surgeon. If said physicians are unwilling or otherwise unable to complete said statements, the ALJ is directed to order a consultative neurological exam, complete with a thorough RFC assessment to determine Plaintiff's true work restrictions.

## V.  Conclusion

For the reasons stated above, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of June 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE